UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

CASE NO. 07-61234
CIV - DIMITROULEAS

ARNOLD ROSEN, Class representative;
ARTHUR GARTER, JEROME MYER,
SUSAN SADETSKY, MILLIE SCHWARTZ,
MARLENE SHUPACK, JULIE TREGERMAN,
SHIRLEY TROUT, CAROLA ZANELLI,
and all others similarly situated,

     Plaintiffs,

vs.

J.M. AUTO INC, d.b.a. J.M. LEXUS;
SOUTHEAST TOYOTA DISTRIBUTORS L.L.C.;
J.M. FAMILY ENTERPRISES INC.; LEXUS U.S.A.;
and TOYOTA MOTOR SALES U.S.A. INC.,

   Defendants.
_____/

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiff moves under Fed. R. Civ. P. 23 to certify the following class:

Every owner and lessee of a Lexus 2007 ES 350
who purchased or leased the vehicle in Florida.

Every Lexus 2007 ES 350 automobile, at the time it was originally sold or leased,

was equipped with a defective airbag occupant classification sensor system.

Plaintiff will show in the following memorandum, and by supporting affidavits if

necessary, that he has satisfied all pleading and proof requirements of Rule 23(a) and (b) for certification of the forgoing class.

## MEMORANDUM IN SUPPORT OF MOTION
## FOR CLASS CERTIFICATION

### Factual Background

Plaintiff brings this action on behalf of himself and all others who leased or purchased a Lexus 2007 ES 350 automobile ("ES 350") in Florida. Pursuant to Federal Motor Vehicle Safety Standard 208, all ES 350s came equipped with an airbag occupant classification system beneath the front passenger seat. Safety Standard 208 mandates that the front passenger-seat airbag must be activated and operational when an individual who exceeds a specific weight is present in that seat. In the ES 350, the airbag occupant classification sensor system erroneously concludes either that no one is in the front passenger seat, or that the person seated in the front passenger seat weighs less than that person's actual weight. These defects de-activate the airbag system so that, in the event of a collision, the airbag will not deploy.

The ES 350's are defective and unreasonably dangerous because their airbag system is not engaging despite the fact that a passenger who requires the protection of the airbag is sitting in the front passenger seat. This problem is caused by the defective design, or manufacture, or both, of the ES 350's passenger airbag system. This defect has created an unreasonably dangerous situation for a

2

person sitting in the front passenger seat of a defective vehicle, and has substantially reduced the defective vehicles' crashworthiness. It is only a matter of time until an individual is injured or killed in a collision because of the defective airbag system in the ES 350.

Class representative, Arnold Rosen, leases two ES 350s with the defective airbag system from defendant J.M. Lexus. After making several complaints to the defendants, Mr. Rosen's vehicles were inspected by the defendants' engineers. Defendants, however, failed to remedy the defect. During one of their attempts to identify and cure the defect, defendants loaned another ES 350 to Mr. Rosen. The loaned ES 350 contained the same defect. Although Mr. Rosen has worked extensively to persuade the defendants to fix the defect in his car, the defendants would not or could not repair the defect in Mr. Rosen's car and have indicated that they do not have a solution for the defect. Reasonable efforts undertaken by other class members to remedy this defect with or through the defendants have also been unsuccessful. Numerous complaints have been made by ES 350 owners or lessors regarding this defect. Attached to this Motion as Exhibit "B" are copies of each complaint made to the National Highway Transportation Safety Administration.

Defendants continued to sell and lease the defective ES 350 although they were fully aware of the nature and scope of the defect. Defendants did not

apprise any prospective purchaser or lessee of the defect, but continued to advertise, market, and warrant the vehicle as safe. The defect: (1) renders the ES 350 dangerously unsafe; (2) appreciably reduces the vehicle's utility since it cannot be safely operated with a passenger in the seat serviced by the non-functioning sensor; (3) appreciably reduces the vehicle's economic value; and (4) subjects the vehicles' owners and lessees to expense and inconvenience.

## Argument

In order to obtain class certification, plaintiff must have standing and must satisfy the requirements of Rules 23(a) and (b). Busby v. JRHBW Realty, Inc., 513 F.3d 1314, 1321 (11th Cir. 2008).[1]

## A. Plaintiff Has Standing

Plaintiff is the lessee of a defective ES 350. He suffered an injury-in-fact when he leased an ES 350 that defendants represented was equipped, or that was presumptively equipped, with a properly functioning airbag system, but that did not contain a functioning system. Plaintiff received a vehicle lower in value, and less useful, than the one he leased as a result of the defective airbag system. He has also expended time and effort in unsuccessful attempts to remedy the defect. These injuries confer standing. Cole v. General Motors Corp., 484 F.3d 717, 721-723 (5th

---

[1]    Standing may, alternatively, be addressed simply as a component of 'typicality' under Rule 23(a)(3). Piazza v. Ebsco Industries, Inc., 273 F.3d 1341, 1346-1347 (11th Cir. 2001).

Cir. 2007) (Defective side impact sensing module in airbag system caused injury-in-fact at the moment of purchase in the form of overpayment, lower value, and loss of usefulness); <u>Womack v. Nissan North Amer., Inc</u>., 550 F. Supp.2d 630, 634-35 (E.D. Texas 2007) (Loss of resale value caused by odometer tampering is an injury-in-fact that confers standing; violation of statute itself confers standing).

### B. Plaintiff Has Satisfied All Rule 23(a) Criteria

Rule 23(a) states:

**(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> **(1)** the class is so numerous that joinder of all members is impracticable;
>
> **(2)** there are questions of law or fact common to the class;
>
> **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> **(4)** the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs have the burden of proving each of the four requirements of Rule 23(a). <u>Busby</u>, 513 F.3d at 1321; <u>Leszczynski v. Allianz Ins</u>., 176 F.R.D. 659, 668 (S.D. Fla. 1997). The substantive allegations of the complaint must be accepted as true, <u>Moreno-Espinosa v. J & J Ag Products, Inc</u>., 247 F.R.D. 686, 687, 691 (S.D. Fla. 2007); <u>Edmonds v. Levine</u>, 233 F.R.D. 638, 640 (S. D. Fla. 2006), although the court may consider supplementary proofs. <u>Mills v. Foremost Ins. Co</u>., 511 F.3d

1300, 1309 (11th Cir. 2008), <u>Cheney v. Cyberguard Corp.</u>, 213 F.R.D. 484, 489 (S.D. Fla. 2003), and hold an evidentiary hearing. <u>Grayson v. K Mart Corp.</u>, 79 F.3d 1086, 1099 (11th Cir. 1996). Rule 23 must be liberally construed to meet its objectives, <u>Walco Investments, Inc. v. Thenen</u>, 168 F.R.D. 315, 323 (S.D.Fla. 1996), and any doubts – although plaintiff submits that there are none in this case – must be resolved in favor of allowing class certification. <u>Singer v. AT & T Corp.</u>, 185 F.R.D. 681, 685 (S.D. Fla. 1998); <u>Cheney</u>, 213 F.R.D. at 489.

### 1.  *Rule 23(a)(1) – The Class is so Numerous that Joinder of all Members is Impracticable*

Defendant Toyota Motor Sales' National Vehicle Administration Manager, Frank Fontanella, states in his August 29, 2007, affidavit, that, as of July 31, 2007, 11,777 ES 350s had been sold or leased through the defendants' fourteen Florida dealerships. Toyota Motor Sales' Technical Analysis Manager, Lance Lewis, states in his affidavit of the same date that every ES 350 comes equipped with the classification sensor that is the subject of plaintiffs' action.

By any standard, the existence of 11,777 putative class members satisfies Rule 23(a)(1)'s 'numerosity' requirement. It would be impracticable to locate, serve and join in this action that many claimants dispersed throughout Florida. <u>Leszczynski</u>, 176 F.R.D. at 669-70 ('[T]he wide geographic dispersion of the class members…throughout Florida…supports a finding of impracticability of joinder"; Joinder would be "expensive, time-consuming and logistically unfeasible");

Singer, 185 F.R.D. at 686-87 ("[E]ven a mere inconvenience in being able to join all of the persons makes class litigation desirable"). As the court noted in Edmonds, 233 F.R.D. at 640-641, in certifying a class of "thousands," "This Circuit has repeatedly held that the numerosity requirement is satisfied with numbers far lower than those at issue here." See, e.g., Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986) (Class of greater than 40 members presumptively adequate for numerosity purposes).

### 2. *Rule 23(a)(2) – There are Questions of Law or Fact Common to the Class*

There is no qualitative or quantitative test to determine 'commonality.' It is only necessary to find one issue common to all or a significant number of class members. Cheney, 213 F.R.D. at 497; Brown v. SCI Funeral Servs. of Fla., Inc., 212 F.R.D. 602, 604 (S. D. Fla. 2003); Edmonds, 233 F.R.D. at 641; Singer, 185 F.R.D. at 687. The common issue can be either an issue of fact or an issue of law. Leszczynski, 176 F.R.D. at 671 ("The threshold for commonality is not high"); Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd., 1994 W.L. 808074 *5-6 (S.D. Fla. 1994).

The commonality requirement does not require that all questions of law and fact raised by the dispute be common to all plaintiffs. Cox, 784 F.2d at 1557; Leszczynski, 176 F.R.D. at 671. Nor will factual differences concerning damages, or defenses, for example, defeat a finding of commonality. Brown, 212 F.R.D. at

604; <u>Cheney</u>, 213 F.R.D. at 497; <u>Singer</u>, 185 F.R.D. at 688; <u>Leszczynski</u>, 176 F.R.D. at 671. Where the causes of action arise out of a common scheme of deceptive conduct, or from the same event, pattern or practice of the defendant, common questions of law or fact will exist. <u>Prado-Steiman ex rel. Prado v. Bush</u>, 221 F.3d 1266, 1279 n. 14 (11th Cir. 2000); <u>Leszczynski</u>, 176 F.R.D. at 671. Similarly, commonality will exist in a case that involves "standardized forms, procedures and disclosures made or required." <u>Fabricant v. Sears Roebuck</u>, 202 F.R.D. 310, 313 (S.D. Fla. 2001); <u>Thorogood v. Sears, Roebuck & Co.</u>, 2007 W.L. 3232491*1 (N.D. Ill. 2007).

The complaint in this case alleges that defendants violated Florida's Deceptive and Unfair Trade Practices Act, §501.201, *et seq*., Fla. Stat. ("FDUPTA") and breached their express and implied warranties, and demands injunctive, declaratory and incidental monetary relief. The complaint identifies numerous common issues of law and fact, including:

1. Whether the defective vehicles were sold or leased subject to express and implied warranties.

2. Whether the defendants conducted appropriate, reasonable and adequate testing of the defective vehicles.

3. Whether the defendants conducted appropriate, reasonable, and adequate research and studies to determine whether the airbag occupant classification sensor systems placed in the defective vehicles would adequately gauge whether an individual was sitting in the front passenger seat.

4. Whether the vehicles have the defect alleged – a defective airbag occupant classification sensor system in the front passenger seat – and whether the defendants knew or should have known about this defect.

5. Whether the defective vehicles suffer from a design or manufacturing defect or non-conformity.

6. Whether the defective vehicles are unreasonably dangerous.

7. Whether the defective vehicles are unfit for their ordinary purposes or intended uses.

8. Whether the defect in the vehicles reduces the crashworthiness of the vehicles.

9. When the defendants first became aware of the defect in the vehicles.

10. Whether the defendants continued to sell, lease, and advertise the defective vehicles despite knowledge of their defective and unsafe characteristics, thereby defrauding and deceiving consumers.

11. What efforts, if any, defendants took to conceal the defective and unsafe characteristics of the defective vehicles from the public.

12. Whether the advertisements and statements issued by the defendants concerning the defective vehicles are false, or tend to deceive the public by failing to disclose the defect, or mislead consumers about the potential existence of a defect.

13. Whether the defendants notified purchasers and lessees of the defective vehicles of their dangerous and defective condition.

14. Whether under common law, the defendants negligently failed to recall an exceptionally dangerous product.

15. Whether, under state and common law, the defendants breached their express warranties and their implied warranties of merchantability and fitness.

16. Whether the Class is threatened with irreparable harm, and has been damaged, and, if so, the nature of the relief and damages to which the members of the Class are entitled.

17. Whether the defendants' uniform course of conduct in the advertising, promotion, sale and lease of the defective vehicles was false or misleading in failing to disclose the defect.

18. Whether the defendants have proximately caused injury or damage to the plaintiffs.

The commonality of the foregoing issues is strengthened by the fact that the defective 2007 vehicles have been on the market for less than two years. Therefore, every person who purchased or leased one of the defective vehicles will likely have purchased or leased the vehicle under identical or nearly identical circumstances, warranties and representations.

Courts have found commonality under circumstances analogous to those in the present case. See, e.g., Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006) ("[T]he question of whether the throttle body is defective is common to all 1999 or 2000 Villager [van] owners because they all have the same throttle body and warranty"); Barden v. Hurd Millwork Co., 249 F.R.D. 316, 319 (E.D. Wisc. 2008) ("[C]lass members purchased similar products and received the same standard warranty, thus there are common questions of law and fact"); Powers v.

Lycoming Engines, 245 F.R.D. 226, 236 (E.D. Pa. 2007) ("Among the questions of fact common to all putative class members are what Lycoming knew about the allegedly defective crankshafts and when it knew it"); In re General Motors Corp. Dex-Cool Products Liability Litigation, 241 F.R.D. 305, 312 (S.D. Ill. 2007) (Common questions included whether statements in GM's owner's manual constituted warranties and whether Dex-Cool was defective); Thorogood, 2007 W.L. 3232491 at *1 (Common questions included whether Sears represented its dryer drum as stainless steel when it was made, in part, of corrodible steel, and whether this practice was unfair and deceptive under Tennessee's Consumer Protection Act); Zeno v. Ford Motor Co., 238 F.R.D. 173, 185 (W.D. Pa. 2006) (Commonality found in one overarching issue: "Did Ford breach a contractual duty when it did not provide vehicles with the upgraded radiator to customers who purchased vehicles with the towing and cooling options."); Chamberlan v. Ford Motor Co., 223 F.R.D. 524, 526 (N.D. Cal 2004) (All claims stemmed from one common allegation: "Ford knew that there was a risk that the plastic intake manifolds would crack prematurely, but concealed that information from ordinary consumers"); Payne v. Goodyear Tire & Rubber Co., 216 F.R.D. 21, 25 (D. Mass. 2003) ("The plaintiffs here allege a common nucleus of facts and legal basis for their claims: Goodyear's hose was defective and the company failed to warn customers of known problems"); O'Keefe v. Mercedes-Benz USA, LLC, 214

F.R.D. 266, 288-89 (E.D. Pa. 2003) (Common issues included whether defendants made and breached express and implied warranties, the applicability of New Jersey's Consumer Protection Statute, whether defendant conducted appropriate pre-sale testing of its vehicles, and whether defendant "failed to inform Plaintiff and class members of potential engine problems"); <u>In re Telectronics Pacing Systems, Inc., Accufix Atrial "J" Leads Products Liability Litigation</u>, 164 F.R.D. 222, 228 (S. D. Ohio 1995) ("The threshold of commonality is not high, and in fact has been relatively easy to satisfy in mass tort cases…. In this case, there is a common question as to whether the "J" leads, containing the retention wire, are defective. Specifically, the facts surrounding the claims for negligence, fraud, breach of warranty and product liability would be the same for all class members [citations omitted]"); <u>Joseph v. General Motors Corp</u>., 109 F.R.D. 635, 640 (D. Col. 1986) ("[T]he central issue to be decided is whether the V8-6-4 engine was defectively designed. This issue underlies every claim brought against GM and is common to every potential class member").

### 3. Rule 23(a)(3) – The Claims of the Representative Parties are Typical of the Claims of the Class

The commonality and typicality requirements of Rule 23(a)(2) and (3) overlap. "Both requirements focus on whether a sufficient nexus exists between the legal claims of the named class representatives and those of the individual class members to warrant class certification." Whereas 'commonality' refers to the

characteristics of the class as a whole, "typicality refers to the individual characteristics of the named plaintiff in relation to the class." <u>Prado-Steiman ex rel. Prado v. Bush</u>, 221 F.3d at 1278-79. <u>See</u> <u>Association for Disabled Americans, Inc. v. Amoco Oil Co</u>., 211 F.R.D. 457, 463 (S.D. Fla. 2002) ("The commonality and typicality requirements of Rule 23(a) tend to merge. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies with in the class [internal citations omitted]"); <u>Singer</u>, 185 F.R.D. at 689 (same). <u>Accord</u> <u>Kornberg v. Carnival Cruise Lines, Inc</u>., 741 F.2d 1332, 1337 (11th Cir. 1984) ("A sufficient nexus is established if the claims…of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory"); <u>Kennedy v. Tallant</u>, 710 F.2d 711, 717 (11th Cir. 1983) (Typicality exists where the defendant "committed the same unlawful acts in the same method against the entire class"); <u>Brown</u>, 212 F.R.D. at 605, <u>Leszczynski</u>, 176 F.R.D. at 672 (The plaintiff's claims will be 'typical' of the claims of the class where the plaintiff's claims "arise from the same event or cause or conduct that gave rise to the claims of the class members").

'Typicality' will exist even if there are factual differences between the claims of the plaintiffs and those of the class. <u>Appleyard v. Wallace</u>, 754 F.2d 955, 958 (11th Cir. 1985) ("[C]ourts have found that a strong similarity of legal theories

will satisfy the typicality requirement despite substantial factual differences [citations omitted]"; Typicality found despite "vast differences surrounding the medical condition of each named Plaintiff"); Edmonds, 233 F.R.D. at 641 ("[T]ypicality does not require that the underlying factual bases be identical"); Cheney, 213 F.R.D. at 491("Any atypicality or conflict between the named Plaintiffs' claims and those of the Class must be clear and must be such that the interests of the class are placed in significant jeopardy [citations omitted]"); Fabricant, 202 F.R.D. at 314 ("Typicality is not defeated by specific defenses…to the named defendant's claim"); Singer, 185 F.R.D. at 689 (Where plaintiff and the class have "an interest in prevailing on similar legal claims…particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render [the plaintiff's] claims atypical [internal citations omitted]"); Leszczynski, 176 F.R.D. at 672 (Factual differences are acceptable "unless the factual position of the representative markedly differs from that of the other members of the class").[2]

---

[2]   Pronounced factual differences should be handled by adjusting the composition of the class rather than by denying certification. See Appleyard, 754 F.2d at 958, n.3 (Contours of the class and subclasses may be shaped to meet the requirements of typicality); Kornberg, 741 F.2d at 1337 ("Differences in the amount of damages between the class representative and other class members does not affect typicality" but "simply requires that the class be limited"); Payne, 216 F.R.D. at 26 (Even if it later turns out that there are material differences between named plaintiff's claims and those [of the class], this can be remedied either by

Courts have found typicality in cases whose facts and claims are analogous to those in the present case. In <u>Daffin</u>, 458 F.3d at 552-53, the court stated:

> Daffin and the other class members' claims arise from the same practices (delivery of nonconforming vehicle), the same defect (the allegedly defective throttle body assembly) and are based on the same legal theory (breach of express warranty). Typicality is satisfied despite the different factual circumstances regarding the manifestation of the accelerator sticking and Ford's attempts to remedy manifested sticking.

<u>See</u> <u>Barden</u>, 249 F.R.D. at 319 (Typicality present because the class representative's claim "turns on the same alleged defect and the same warranty as the claims of class members"); <u>In re General Motors Corp. Dex-Cool Products Liability Litigation</u>, 241 F.R.D. at 312 (Typicality satisfied by claim that warranty in owner's manual was breached as to the entire class); <u>Zeno</u>, 238 F.R.D. at 186 ("Both plaintiffs and the members of the putative class were allegedly charged [by Ford] for an upgraded radiator that they never received. The typicality requirement of Rule 23(a)(3), therefore, is satisfied in this case"); <u>Chamberlan</u>, 223 F.R.D. at 526 (Owners' claims against Ford 'typical' where all had claims arising out of Ford's scheme to sell vehicles with defective exhaust manifolds); <u>O'Keefe</u>, 214 F.R.D. at 289 (Typicality existed because all had the same claims for engine

---

narrowing the class definition or by adding additional named plaintiff(s) as class representatives").

damage or the risk of engine damage against Mercedes-Benz); <u>Joseph</u>, 109 F.R.D. at 641 (Typicality exists because plaintiffs and the member class share common legal theories against GM "aris[ing] from the same set of circumstances; namely, those regarding the design, manufacture, marketing, and distribution of the 1981 Cadillacs equipped with the V8-6-4 engine").

### 4. Rule 23(a)(4) – The Representative Parties Will Fairly and Adequately Protect the Interests of the Class.

The 'adequacy' criterion in Rule 23(a)(4) embraces two inquiries: (1) whether any substantial conflicts exist between the plaintiffs and the class, and (2) whether the plaintiffs and their attorneys will vigorously and competently prosecute the action. <u>Busby</u>, 513 F.3d at 1323; <u>Kingston Square</u>, 1994 W.L. 808074*8; <u>Moreno-Espinosa</u>, 247 F.R.D. at 690; <u>Edmonds</u>, 233 F.R.D. at 642. Generally, "[a]dequacy of representation is presumed unless there is evidence to the contrary." <u>Brown</u>, 212 F.R.D. at 605; <u>Association for Disabled Americans, Inc. v. Amoco Oil Co</u>., 211 F.R.D. at 464.

Plaintiff's counsel, Sheldon J. Schlesinger, P.A., is one of the most prominent, aggressive and successful plaintiffs' law firms in Florida. The Schlesinger firm is obviously competent and motivated to prosecute this action and – as is the custom with all plaintiffs' law firms – will advance the costs of this action. <u>See</u> <u>Walco Investments</u>, 168 F.R.D. at 328 (Court credited plaintiff's counsel's representation in its briefs that it would advance costs). The plaintiff is

equally motivated to seek a remedy for the defects that have rendered his ES 350 –
like the ES 350 of every other class member – unsafe and of reduced utility and
value; and there is no conflict of interest in this or any other respect between the
plaintiff and the class. See Daffin, 458 F.3d at 553 ("Daffin has the same throttle
body assembly as the other class members and asserts the same claim for
diminution in value of the Villager [van] due to delivery of a non-conforming
vehicle"); Payne, 216 F.R.D. at 26 (The plaintiffs and the class "all…have a
common interest in proving that Goodyear's hose is defective"). Plaintiffs will
presume that "adequacy" will not be contested in this case but reserve the right to
submit proofs on this issue in the event it is.

Plaintiff, as shown above, has clearly satisfied the numerosity,
commonality, typicality and adequacy criteria of Rule 23(a)(1)-(4).

### C. Plaintiff Has Satisfied Rule 23(b) Criteria

In addition to proving the four elements of Rule 23(a), the party moving
for class certification must prove that the proposed action satisfies at least one of
the criteria of Rule 23(b)(1)-(3). Busby, 513 F.3d at 1321. The present action
satisfies 23(b)(2) *and* 23(b)(3). Those provisions read:

**(b) Types of Class Actions.** A class action may be maintained
if Rule 23(a) is satisfied and if:

….

17

**(2)** the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

**(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;

> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> **(D)** the likely difficulties in managing a class action.

### 1. *A Class May Be Certified Under Rule 23(b)(2)*

Although plaintiff has alleged causes of action for breach of warranty and violation of FDUPTA, the *primary* remedies he seeks are declaratory and injunctive: a finding that the ES 350 is defective, a judgment interpreting the defendants' class-wide warranties with respect to the defect, and a mandatory class-wide injunction forcing defendants to give notice of the defect to the class and requiring defendants to comply with their warranties and recall or correct the defective ES 350s. Rule 23(b)(2) allows a class action in these circumstances:

> Plaintiff seeks an injunction to force Defendants to make proper disclosure under Florida [law]. Requesting a declaration that

> Defendants presently are violating the law and an injunction
> forcing defendants to comply with the law is precisely the type
> of class appropriate for class certification under Rule 23(b)(2).

Fabricant, 202 F.R.D. at 316. See Edmonds, 233 F.R.D. at 642 (Certification under

Rule 23(b)(2) is appropriate where defendant has acted in a manner "equally

applicable to all members of the class, and that injunctive or equitable relief is

appropriate"); Leszczynski, 176 F.R.D. at 673-74 (Rule 23(b)(2) applicable where

defendants have engaged in the same pattern of activity, or directed their conduct,

toward all members of the class, and the primary relief sought is declaratory or

injunctive).

     The fact that plaintiff in this case also seeks damages for breach of

warranty and FDUPTA violations does not render Rule 23(b)(2) certification

unavailable. The monetary relief plaintiff seeks is simply incidental to his primary

remedies which are injunctive and declaratory. See Association for Disabled

Americans, 211 F.R.D. at 465, n.4 (Rule 23(b)(2) applies even if damages are

sought as long as the plaintiffs' action, in its entirety, is not "wholly or

predominantly" for money damages [citations omitted]); Leszczynski, 176 F.R.D.

at 674 (As long as the demand for money damages is "ancillary" to the declaratory

or injunctive claims, or, stated otherwise, "the primary relief sought is declaratory

or injunctive," Rule 23(b)(2) certification is appropriate); In re Telectronics Pacing

Systems, 164 F.R.D. at 229 ("In this case…it seems that the Plaintiffs major

concern is whether the retention wire in the "J" leads are [sic] defective. Therefore, this action is not one primarily for damages").[3]

Here, as will be shown in subpoint 2, <u>infra</u>, the statutorily-based damages of the class members under §§501.211 and 672.714, Fla. Stat., will be susceptible to computation by an objective standard and not be dependent on individualized findings. They thus are similar to the group damages that are permissible in this circuit in a Rule 23(b)(2) action. <u>See</u> <u>Murray v. Auslander</u>, 244 F.3d 807, 812 (11th Cir. 2001) (Monetary relief in a 23(b)(2) action must be "incidental" to the declaratory or injunctive relief, and more of a "group" remedy than an "individual" remedy); <u>Tyrell v. Robert Kaye & Assocs., P.A.</u>, 223 F.R.D. 686, 690 (S.D. Fla. 2004) (Rule 23(b)(2) certification appropriate where the statutory money damages sought were "incidental to the declaratory relief" and were capable of being computed based on an objective standard).

---

[3]   Even if, *arguendo*, the claims of some of the class are deemed "primarily" monetary in nature, a "hybrid" form of Rule 23(b)(2) certification – as an alternative to straight Rule 23(b)(3) certification for all class members [see subpoint 2, <u>infra</u>] – would be appropriate. The court could:

> certify a Rule 23(b)(2) class for the portion of the case seeking equitable relief and a Rule 23(b)(3) class for the portion of the case seeking damages or…certify[] a class under Rule 23(b)(2) for monetary and equitable remedies, but exercis[e] its plenary authority under Rules 23(d)(2) and 23(d)(5) to provide all class members with notice and an opportunity to opt out.

<u>Fabricant</u>, 202 F.R.D. at 316.

## 2. *A Class May Be Certified Under Rule 23(b)(3)*

i. Questions of law or fact common to class members
predominate over questions affecting
only individual members

The 'predominance' analysis required by Rule 23(b)(3) "reduces to whether the issues in the class action that are subject to generalized proof and thus apply to class as a whole predominate over those issues subject to only individualized proof." Mills, 511 F.3d at 1308, n.2. The court must "assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." Klay v. Humana, 382 F.3d 1241, 1254, 1255 (11th Cir. 2004). Accord Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1260-61 (11th Cir. 2003). All common questions of law or fact need not predominate over all individual questions. It is sufficient if only *some* common questions of law or fact predominate over individual questions with respect to specific issues. Busby, 513 F.3d at 1324; Zeno, 238 F.R.D. at 197 ("[A]t least with respect to the issues of whether Ford had a contractual obligation to provide an upgraded radiator…and whether this obligation was breached….common issues of fact and law predominate over any individualized inquiries").

The predominance requirement allows factual variations in the specific claims of class members as long as those variations will not cause the common issues to break down into an unmanageable variety of individual legal and factual

issues. Mills, 511 F.3d at 1309; Klay, 382 F.3d at 1255; Moreno-Espinosa, 247 F.R.D. at 690. For factual variations to be fatal to a Rule 23(b)(3) claim, those variations must generally relate to liability, not damages. Klay, 382 F.3d at 1260 ("It is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification"); Brown, 212 F.R.D. at 606 (Courts focus "on whether there are common liability issues which may be resolved efficiently on a class-wide basis").

Numerous courts have recognized that the presence of individualized damages issues does not preclude a finding that common issues predominate. Klay, 382 F.3d at 1259; Allapattah Servs., 333 F.3d at 1261; Leszczynski, 176 F.R.D. at 675 ("The need for calculations of the individual benefits due to individual claimants is no reason to bar class relief with respect to common legal issues [citations omitted]"):

> If Plaintiffs are able to establish liability, the Court may either appoint a master to resolve actual damages or merely allow class members to bring individual actions with the benefit of a res judicata finding of liability. …[T]he potential recovery of actual damages by some class members in subsequent proceedings does not defeat predominance.

Fabricant, 2002 F.R.D. at 317. Accord O'Keefe, 214 F.R.D. at 292 (Individual damages issues do not prevent Rule 23(b)(3) certification where common liability

issues predominate).[4] Likewise, the presence of individual issues of reliance does not preclude a finding of predominance. <u>Klay</u>, 382 F.3d at 1258-1259; <u>Kirkpatrick v. J.C. Bradford & Co</u>., 827 F.2d 718, 724-25 (11th Cir. 1987) ("In view of the overwhelming number of factual and legal issues presented by plaintiff' misrepresentation claims, the mere presence of the factual issue of individual reliance could not render the claims unsuitable for class treatment"). <u>See</u> <u>Thorogood</u>, 2007 W.L. 3232491 at *1 ("[W]here there is a uniformity of or a standard written representation, the court can presume individual reliance").

In the present case, it may not be necessary to have individualized damages determinations. The economic effect on each class member of having an 2007 ES 350 with a defective airbag sensor may be so similar in terms of loss of value and cost of repair that the court, in conjunction with the parties' experts could work out a compensation formula applicable to the class as a whole. <u>See</u> <u>Klay</u>, 382 F.3d at 1256-60 & nn. 8,9 ("Particularly where damages can be computed according to some formula, statistical analysis, or other easy or essentially mechanical methods, the fact that damages must be calculated on an individual basis is no impediment to class certification"); <u>Payne</u>, 216 F.R.D. at 29 ("[T]he individualization of damages in consumer class actions is rarely

---

[4]   Class members who want to pursue their own damages actions may, of course, opt-out under Rules 23(b)(3) and 23(c)(2)(B)(v). <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 811-12 & n.3 (1985).

determinative….There is no reason to suspect that the parties and the court could not come up with a fair and workable damages formula or claims procedure, with compensation for replacement [of the defective product] perhaps tied to [the manner in which the product was used or the amount of it used]”); O'Keefe, 214 F.R.D. at 292 (Court notes that damages might be calculated using "an objective formula").[5]

An example of the predominance analysis that should be conducted here is found in Joseph, 109 F.R.D. at 641-42:

> After reviewing plaintiffs' claims, GM's defenses, and both parties' arguments regarding predominance, I find that there are some questions of fact and law in this case which will require individualized proof. These questions include: (1) whether the alleged design defects caused the claimed damages, (2) whether the class members relied on GM's express warranties, (3) whether the class members relied on GM's purported misrepresentations, and (4) the amount of damages suffered by each class member.
>
> On the other hand, this case presents many common issues of law and fact, including: (1) whether the V8-6-4 engine was defectively designed, (2) whether GM was negligent in testing the engine, (3) whether the design defects existed at the time GM placed the Cadillacs in the stream of commerce, (4) whether the alleged design defects caused certain characteristic operational problems, (5) whether the engine is unreasonably

---

[5] The primary remedy for both a FDUPTA violation under §501.211, Fla. Stat., and a breach of warranty under §672.714, Fla. Stat., is simply the difference in market value between the product as delivered and the product as it should have been delivered had there been no defect. See, e.g., Collins v. DaimlerChrysler Corp., 894 So.2d 988, 991 (Fla. 5th DCA 2004). This measure of damages obviously lends itself to the computation of a class-wide monetary remedy.

dangerous because of the alleged defects, (6) whether GM failed to warn consumers of the alleged defects, (7) whether the engine is reasonably fit for the ordinary purposes for which it was intended to be used, (8) whether implied warranties of fitness and merchantability existed with respect to the V8-6-4 engine, (9) whether express warranties regarding the engine existed, (10) whether the express warranties satisfied certain disclosure requirements, (11) whether the implied  and express warranties were breached because of a common engine defect, (12) whether GM knew of the alleged defects before it marketed and distributed the Cadillacs, (13) whether GM misrepresented the performance ability and characteristics of the V8-6-4 engine, (14) whether GM failed to disclose information regarding the engine's purported defects and the problems caused by those defects, (15) whether GM was negligent in making the alleged misrepresentations and failing to disclose material facts, and (16) whether GM was negligent in placing the engine on the market knowing that it was defective.

See, also, Daffin, 458 F.3d at 553 (Predominant common issues include whether the throttle body was defective, whether the defect reduced the value of the vehicle, and whether Ford's warranty covered the defect); Chamberlan, 223 F.R.D. at 526-27 (Predominant common questions include whether Ford's manifold design was defective, whether Ford was aware of it, whether Ford had a duty to disclose the defect, whether it failed to do so, and whether the failure violated the Consumer Legal Remedies Act); O'Keefe, 214 F.R.D. at 291-92 (Calling the case "a typical consumer fraud case where liability issues predominate," the court stated that the allegations of "a design or manufacturing defect or deceptive scheme" made common issues predominate); In re Telectronics Pacing Systems, 164 F.R.D.

at 230-31 (Common issues of whether the product was defective, negligence, strict liability, fraud, misrepresentation, and breach of warranty predominated; causation and damages could be tried separately); In re Copely Pharmaceutical, Inc., 158 F.R.D. 485, 492 (D. Wyo. 1994) (Although individual issues predominated as to causation and damages, common issues predominated with respect to the plaintiff's claims for "strict liability, negligence per se, breach of warranties, and the request for declaratory relief"); In re Norplant Contraceptive Products Liability Litigation, 1996 W.L. 173419*1-2 (E.D. Texas 1996) (Predominant issues included many concerning strict liability, negligence, breach of warranty, and consumer fraud).

Here, the liability issues proving Rule 23(a)(3) commonality that are listed at pp. 8-9, supra, predominate, and will be fully resolved by classwide proofs and findings. Any individualized liability issues that may remain will not prevent common liability issues from predominating. Nor will the possible need for individual determinations of damages – assuming the absence of the type of damages formula mentioned in Klay and Payne – bar a finding of predominance under Rule 23(b)(3).

      ii.   A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

In a 'superiority' analysis, "[the] focus is not on the convenience or burden of a class action suit per se, but on the relative advantage of a class action suit over whatever other forms of litigation might be realistically available to the

plaintiffs." <u>Klay</u>, 382 F.3d at 1269, 1273. The finding of predominance will have a "tremendous impact" on the 'intertwined' issue of superiority. <u>Id</u>. As <u>Klay</u> observed, where common issues have been found to predominate, "we would be hard pressed to conclude that a class action is less manageable than individual actions." <u>Id</u>. at 1273.

In addition to 'predominance,' all other factors in this case point to the advantageousness or superiority of a class action. The 11,000-plus geographically-dispersed ES 350 owners and lessees obviously constitute too large a class to permit individual motions to intervene in this case, and thousands of separate lawsuits would overcrowd the docket in this district. A class lawsuit clearly offers substantial economies of time, effort, expense for both the litigants and the judiciary. <u>Klay</u>, 382 F.3d at 1270; <u>Kennedy</u>, 710 F.2d at 718; <u>Moreno-Espinosa</u>, 247 F.3d at 691; <u>Payne</u>, 216 F.R.D. at 29; <u>Cheney</u>, 213 F.R.D. at 502; <u>Leszczynski</u>, 176 F.R.D. at 675; <u>Kingston Square Tenants Ass'n</u>, 1994 W.L. 808074 at *5; <u>In re Amerifirst Securities Litigation</u>, 139 F.R.D. 423, 435 (S.D. Fla. 1991).

There are, to plaintiffs' knowledge, no other Florida lawsuits by ES 350 owners or lessees, and there is no reason to believe that any putative class member would have an interest in individually controlling his or her separate action. <u>De Leon-Granados</u>, 497 F.3d at 1220; <u>Klay</u>, 382 F.3d at 1269. The relatively small amount in controversy in each class member's claim makes it unlikely that a class

member would commence an individual action, especially against such a dauntingly large and well-financed corporate opponent as Toyota. <u>Klay</u>, 382 F.3d at 1270-71 (Individual suits unlikely given the small size of an individual claim coupled with the prospect of litigating against a "corporate behemoth[] with a demonstrated willingness and proclivity for drawing out legal proceedings far as long as humanly possible and burying [its] opponents in paperwork and filings"); <u>Singer</u>, 185 F.R.D. at 692 (Individual lawsuits unlikely where each class member's claim is "minimal," and "it would be extremely costly for individuals to proceed against a large corporation such as AT &T."); <u>Leszczynski</u>, 176 F.R.D. at 676. Indeed, given the latent nature of the defect in this case, there may well be class members who do not yet know that their ES 350s are defective. <u>In re Amerifirst Securities Litigation</u>, 139 F.R.D. at 435 (It is relevant in a 'superiority' analysis that some potential class members may not even know they possess a cause of action).

There will not be, in short, any problems in concentrating the litigation in this forum or in managing this case as a class action. A class action is clearly more efficient and fair than, and superior to, all other types of actions.

## **CONCLUSION**

Plaintiff has shown that he has standing and that the proposed class action will satisfy the requirements of Rules 23(a) & (b). This court should

accordingly grant plaintiff's motion and certify the class consisting of the following:

> Every owner and lessee of a Lexus 2007 ES 350
> who purchased or leased the vehicle in Florida.

Alternatively, this court should certify whatever classes and hybrid classes under Rules 23(b)(2) & 23(b)(3), subclasses under Rule 23(c)(5), and "particular issues" under Rule 23(c)(4), may be equitable and proper. Plaintiff also requests an evidentiary hearing at which he will adduce additional facts in support of his motion.

**WHEREFORE**, Plaintiffs respectfully request this Court to enter an Order certifying this class, and for such further relief as this Court deems just and equitable.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2008, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record identified on the below stated Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or by U.S. Mail.

SHELDON J. SCHLESINGER, P.A.
Attorney for Plaintiff(s)
1212 Southeast Third Avenue
Fort Lauderdale, FL 33316
(954) 467-8800
(954) 923-4803

By:    s/Jonathan Gdanski
         Florida Bar No. 0032097

**<u>Service List</u>**

**<u>Case No. 07-61234</u>**
**<u>Rosen et al v. J.M. Auto Inc. et al</u>**

John Carl Seipp, Esq.
Donald Blackwell, Esq.
SEIPP FLICK
2 Alhambra Plaza
Suite 800
Miami, FL 33134
Phone: 305-995-5600
Fax: 305-995-6100