UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61234 - CIV - DIMITROULEAS

ARNOLD ROSEN, Class Representative;
ARTHUR GARTER; JEROME MYER;                        Magistrate Judge Rosenbaum
SUSAN SADETSKY; MILLIE SCHWARTZ;
SHIRLEY TROUT; CAROLA ZANELLI; et al.,

      Plaintiffs,

vs.

J.M. AUTO INC, a Florida Corporation,
d.b.a. J.M. LEXUS; SOUTHEAST
TOYOTA DISTRIBUTORS L.L.C.,
a Delaware Corporation; J.M. FAMILY
ENTERPRISES INC., a Florida Corporation;
LEXUS U.S.A.; TOYOTA MOTOR SALES
U.S.A. INC., a California Corporation,

      Defendants.

_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

THIS IS CAUSE is before the Court upon the Plaintiff's Motion for Class Certification

[DE 48] filed on September 24, 2008.  The Court has carefully considered the Motion, the

Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Class Certification

[DE 53] filed on October 13, 2008, the Plaintiff's Reply to Defendants' Memorandum and

Affidavits in Opposition to Plaintiffs' Motion for Class Certification [DE 54] filed on October

23, 2008, and the parties' affidavits and exhibits, and is otherwise fully advised in the premises.

## I. BACKGROUND

On or about July 18, 2007, the Plaintiffs in this action filed suit in the circuit court for the

Seventeenth Judicial Circuit in and for Broward County.  The Defendants removed the case to

federal court on August 29, 2007.  While the Complaint contains twenty (20) Counts, the claims break down into the following categories, each asserted against the various Defendants in this case: (1) Breach of Express Warranty, (2) Breach of Implied Warranty, (3) Claim for Equitable and Injunctive Relief for failure to inform its customers of the potential defects in their vehicles and (4) Violations of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").  The putative class in this case consists of "[e]very owner or lessee of a 2007 Lexus ES 350 who purchased or leased the vehicle in Florida." [DE 48].

Pursuant to Federal Motor Vehicle Safety Standard ("FMVSS") 208,[1] all vehicles must have a "smart airbag," which, among other things, activates the passenger side airbag when it detects an adult occupant in the front passenger's seat.  In line with FMVSS 208, all ES 350s are equipped with an airbag occupant classification system (OCS) beneath the front passenger seat.  However, Plaintiffs allege that the ES 350 is defective because the ES 350's OCS erroneously concludes that either no one is present in the front seat, or that the person weighs less than the person's actual weight.  These defects de-activate the airbag system so that, in the event of a collision, the airbag does not deploy.  The Plaintiffs allege that this problem is caused by the inadequate design or manufacture of the ES 350's passenger airbag system and renders the ES 350 defective and unreasonably dangerous.

Plaintiffs allege that members of the proposed class (namely Arnold Rosen, the proposed class representative) complained to the Defendants and had his vehicle inspected by Defendants' engineers.  Plaintiffs have lodged official complaints with the National Highway Traffic Safety

---

[1] The FMVSS are safety standards promulgated by the Department of Transportation under the authority of the National Traffic Motor Vehicle Safety Act ("Safety Act").  See Geier v. Am. Honda Motor Co., 529 U.S. 861, 864-65 (2000).  The stated objective of the Safety Act is "to reduce traffic accidents and deaths and injuries resulting from traffic accidents."  49 U.S.C. § 30101.

Administration ("NHTSA").  The Defendants, however, have still failed to remedy the defect and repair or replace the Plaintiffs' vehicles.

Plaintiffs allege that the Defendants continued to sell and lease the defective ES 350s despite the fact that they are fully aware of the nature and scope of these dangerous defects. Plaintiffs allege that the Defendants did not apprise any prospective purchaser or lessee of the defect, but continued to market and warrant the vehicle as safe and affirmatively described the air bag system in terms inconsistent with the existence of the defect.  Plaintiffs also claim that the Defendants have failed to remedy the alleged defect.

## II. DISCUSSION

Parties seeking class action certification must satisfy the four requirements of Federal Rule of Civil Procedure 23(a), commonly referred to as numerosity, commonality, typicality and adequacy of representation.  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 613 (1997).  Parties moving for class certification bear the burden of establishing each element of Rule 23(a). London v. Wal-Mart Stores, 340 F.3d 1246, 1253 (11th Cir. 2003).  If the party seeking class certification fails to demonstrate any single requirement, then the case may not continue as a class action.  Jones v. Roy, 202 F.R.D. 658, 662 (M.D. Ala. 2001). Specifically, the four requirements of Rule 23(a) are:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must prove that the action is maintainable under one of the three subsections of Rule 23(b).  Amchem Prods., 521 U.S. at 614.  Here, Plaintiff puts forth that class certification is appropriate pursuant to either Rule 23(b)(2) or (b)(3).  Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole".  Fed. R. Civ. P. 23(b)(2).  Class certification under Rule 23(b)(3) is appropriate when (1) "questions of law or fact common to the members of the class predominate over any questions affecting only individuals members," and when (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In deciding whether to certify a class, a district court has broad discretion. Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir. 1992).  Although a district court is not to determine the merits of a case at the certification stage, sometimes "'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'"  Mills v. Foremost Ins. Co., 511 F.3d 1300, 1309 (11th Cir. 2008) (quoting General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).  A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been met. Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).  However, doubts are to be resolved in favor of certifying the class.  Singer v. AT&T Corp., 185 F.R.D. 681, 685 (S.D. Fla. 1998).

## A.  Defendants' Objections to the Class Definition

A court may address the adequacy of the class definition before analyzing whether the proposed class meets the Rule 23 requirements.  See e.g., Perez v. Metabolife Int'l, Inc., 218 F.R.D. 262, 269 (S.D. Fla. 2003) (addressing whether the class definition would require

individualized determinations before addressing the Rule 23 requirements).  Class definitions that are overly broad, vague, or which would require administratively difficult individualized determinations should be denied.  Id. (citing White v. Williams, 208 F.R.D. 123, 129-30 (D.N.J. 2002)).

Defendants listed nine objections to the Plaintiffs' class definition.  First, Defendants argue that between April 2007 and September 2007, ES 350s were equipped with a different part than Defendants believe that Plaintiffs' Complaint is based on.  This argument fails because the Plaintiffs did not base their Complaint with respect to a specific part used prior to April 2007, but to the OCS in 2007 Lexus ES 350s and the replacement OCS when Defendants repaired them (Complaint ¶54).  If the evidence eventually shows that the Plaintiffs cannot support a claim with regards to ES 350s equipped with the later OCS part, then the class definition may be modified at that point.

Second, Defendants argue that those who purchased an ES 350 in the resale market benefitted from any diminution in value attributable to the allegedly defective OCS.  Defendants apparently base this on the assumption that the purchasers in the resale market knew of the alleged defect.  This assumption runs counter to Plaintiff's allegations and is unsupported by evidence.  Therefore, the objection also fails.

The third objection fails because it misunderstands the Plaintiff's class definition as including those who have since sold or traded their ES 350s, which it does not.

Fourth, Defendants object to the inclusion of lessees who are contractually obligated to arbitrate claims such as those in Plaintiff's Complaint.[2]  Plaintiffs respond that Defendants have

---

[2] In particular, Defendants complain that their counsel only received a copy of the Lease Agreement, which contains an arbitration provision, from Plaintiff Arnold Rosen on October 7, 2008.  If the Defendants wish to enforce the arbitration provision against Mr. Rosen, they must file a separate motion to compel arbitration, so that the issue

not provided any proof that there are other class members besides Mr. Rosen who have signed lease agreements containing arbitration clauses.   Plaintiffs further argue that the possibility of arbitration clauses in the contracts should not preclude class certification, as other courts have certified classes in similar circumstances.  <u>Coleman v. GM Acceptance Corp.</u>, 220 F.R.D. 64, 90-91 (M.D. Tenn. 2004).

As Plaintiff has argued, that some of the class members claims may be affected by arbitration agreements does not make class certification inappropriate.  We find that it would be more appropriate to create subclasses rather than deny certification outright.  <u>See</u> <u>Collins v. Int'l Dairy Queen</u>, 168 F.R.D. 668, 677 (M.D. Ga. 1996) (establishing subclasses where some of the class members had contracts containing arbitration provisions). Just as in <u>Collins</u>, the issue of whether arbitration should be compelled is not properly before this Court (in fact, it is not known how many class members' claims are arbitrable) though the issue may later arise. <u>Id.</u> at 678.  We therefore find it appropriate to create a subclass of lessees whose lease agreements contain arbitration provisions.

Fifth, the Defendants argue the class definition is overly broad because it includes lessees, whose rights and interests are different than the owners because lessees pay a fixed price and do not suffer any diminution in value.  The Court cannot make sense of this argument.  If Plaintiffs' allegations are true, lessees are paying more for cars than they are worth, and are driving cars that have a defect; they therefore would be entitled to relief.

Sixth, Defendants put forth that in the case of a leased vehicle, there would be two potential class members, the lessee and the leasing company or lending institution owner of the car, whose interests are divergent or in conflict with each other.  As Plaintiffs state in their Reply,

---

may properly be before this Court.

this too is an issue that may be handled through the creation of subclasses.  Creating a subclass of lessees would cure problems created by any divergent interests between lessees and owners.

Seventh, Defendants object that the class definition includes those who purchased or leased an ES 350 outside the state and have since moved to Florida.  This is another misreading of the class definition, which only includes those who "who purchased or leased the vehicle *in* Florida." [DE 48, emphasis added]

Eighth, Defendants argue that the class should not include consumers who have violated their warranties by not providing notice to the Defendants of the alleged defects.  This argument assumes that there are class members that had notice of the alleged defect but did not report it. Whether the warranties were violated goes to the merits of the case, and is not reason for this Court to deny class certification.

Ninth, Defendants argue that the class definition is not precise or adequate because it includes class members who have purchased it from unauthorized Lexus dealers who may have exposed the purchasers or lessees to representations that did not originate from the Defendants. While it is true that such purchasers or lessees may have been exposed to such representations, the claims in the Complaint, where they rely on representations, are based on those made by the Defendants.  Defendants have failed to explain how representations by unauthorized dealers would relieve Defendants of their duties regarding their own representations.  This argument also fails.

Therefore, we find that the proposed class definition is not vague or overbroad such that we should deny certification, but we do find that it would be proper to create subclasses for lessees who have arbitration provisions in their lease agreements, and lessees who do not.

## B.  Rule 23(a)(1): Numerosity

There is no rigid standard for determining numerosity.  The Eleventh Circuit has held that "[g]enerally, less than twenty-one is inadequate, more than forty adequate."  Cheny v. Cyberguard Corp., 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir. 1986)).  The focus of the inquiry is "whether joinder of proposed class members is impractical."  Armstead v. Pingree, 629 F. Supp. 273, 279 (M.D. Fla. 1986).  Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class."  Fuller v. Becker & Poliakoff, P.A., 197 F.R.D. 697, 699 (M.D. Fla. 2000).  The "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied."  LaBauve v. Olin Corp., 231 F.R.D. 632, 665 (S.D. Ala. 2005) (citing Bacon v. Honda of Am. Mfg., Inc., 370 F.3d 565, 570 (6th Cir. 2004)).  A court should also consider the "geographic dispersion of the class members, judicial economy and the ease of identifying the members of the class and their addresses."  Powers v. Government Emples. Ins. Co., 192 F.R.D. 313, 317 (S.D. Fla. 1998).

In this case, there were 11,777 ES 350s were sold or leased for retail in Florida by July 11, 2007.  Defendants argue that "only a portion" of those cars contained the original part in the OCS, and those manufactured after April 18, 2007 used a different part which did not function in the way that Plaintiffs complain about.  As we discussed above, the Plaintiffs have alleged that the OCS was defective on the ES 350s, and did not limit their allegation to those ES 350s manufactured during a certain time period or with a particular part number.  Therefore, that the ES 350s used a different part in their OCS after April 18, 2007 is not relevant for numerosity at this time.  Even if it were, this Court could reasonably assume that a significant portion of the 11,777 cars were produced between March, 2006 and April 18, 2007, rather than between April

18, 2007 and July 11, 2007.

Defendants also argue that the low number of complaints they have received shows that the numbers is too few to warrant a class. This argument assumes that potential class members would all be aware of the alleged defect. Since it is possible that a significant number of ES 350 owners or lessees are unaware of the alleged defect in the car if we assume Plaintiffs allegations regarding Defendants' representations are true, the low number of complaints does not preclude a finding of numerosity.

We find that with thousands of potential class members, some of whom may have dispersed across the nation since purchasing or leasing an ES 350 in Florida, joinder of the proposed class members would be impractical, other than in a class action suit.

### C. Rule 23(a)(2) Commonality and Rule 23(b)(3) Predominance

Because there is considerable overlap between Rule 23(a)'s commonality requirement and Rule 23(b)(3)'s predominance requirement, we address them together.

Rule 23(a)'s commonality prerequisite requires at least one issue common to all members of the class. However, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." Walco Invs., Inc. v. Thenen, 168 F.R.D. 315, 325 (S.D. Fla. 1996). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." In re Terazosin Hydrochloride, 220 F.R.D. 672, 687 (S.D. Fla. 2004); Agan v. Katzman & Korr, P.A., 222 F.R.D. 692, 697 (S.D. Fla. 2004); In re Amerifirst Sec. Litig., 139 F.R.D. 423, 428 (S.D. Fla. 1991). However, "a class action must involve issues that are susceptible to class-wide proof." Cooper v. Southern Co., 390 F.3d 695, 713 (11th Cir. 2004) (quoting Murray v. Auslander, 244 F3d 807, 811 (11th Cir. 2001)).

Though similar to the commonality issue, the predominance requirement is "far more demanding."  Cooper, 390 F.3d at 722; see also, Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1005 (11th Cir. 1997).  For Rule 23(b)(3), "it is not necessary that all questions of law or fact be common, but only that some questions are common and that they predominate over the individual questions." Klay v. Humana, Inc., 382 F.3d 1241, 1254 (11th Cir. 2004).  The court's inquiry is typically focused on "whether there are common liability issues which may be resolved efficiently on a class-wide basis."  Brown v. SCI Funeral Servs. of Fla., 212 F.R.D. 602, 606 (S.D. Fla. 2003).  Issues that are subject to generalized proof and applicable to the whole class must predominate over the issues involving individualized proof.  Kerr v. City of W. Palm Beach, 875 F.2d 1546, 1558 (11th Cir. 1989).  To conduct this inquiry, the Court must consider the cause of action and "what value the resolution of the class-wide issue will have in each member's underlying cause of action."  Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1234 (11th Cir. 2000).

Plaintiffs list eighteen issues which are common among the class.  Most importantly, the class members would share the common issue of owning or leasing 2007 Lexus ES 350s, which contained allegedly defective OCSs in violation of warranties and fair trade practices.  This central issue is common to all members within the Plaintiffs' class definition.

Defendants raise several issues that they feel preclude a finding of commonality.  Most salient of these is the argument that Plaintiffs' claims require a finding of whether the putative class members relied on representations made by Defendants.  There is currently a split in authority among Florida courts as to whether a showing of reliance by the consumer is necessary for certification of a class with a FDUTPA claim.  Davis v. Powertel Inc., 776 So. 2d 971, 974 (Fla. 1st DCA 2000) (holding that it is not necessary); Phillip Morris USA Inc. v. Hines, 883 So.

2d 292, 294 (Fla. 4th DCA 2003) (criticizing Powertel's analysis that reliance is not necessary);

Black Diamond Properties, Inc. v. Haines, 940 So. 2d 1176, 1179 n.1 (Fla. 5th DCA 2006)

(same).   When this Court addressed this issue in Pop's Pancakes, Inc. v. NuCO2, Inc., Judge

Graham, too, was critical of Powertel, although we found that case to be distinguishable from

Powertel because Powertel involved a one-time interaction between the business and the

consumer.  Pop's Pancakes, Inc. v. NuCO2, Inc., 251 F.R.D. 677, 686-87 (S.D. Fla. 2008).  As

the purchase of a car is not typically a simple affair, and purchasers and lessees may very well

have relied on different representations made to them, this case too is distinguishable from

Powertel. We also find the Powertel's conclusion that reliance is not necessary to be

troublesome.  We therefore find that commonality and predominance is lacking for the FDUTPA

claims.

   This does not, however, apply to Plaintiffs' breach of express warranty claims.  Plaintiffs

have claimed that Defendants have breached their express written warranties, and thus there are

specific, and common, representations the Plaintiffs are basing their claims on. (E.g., Complaint

¶52).  Defendants have not argued that the written warranties differed in any material respect in

with regard to different purchasers or lessees.

   Defendants argue that each putative class members' experience with the cars is different,

and that defeats a finding of commonality.  For example, Defendants argue that use or

maintenance of the car, and whether the OCS was in fact working properly, are differences that

work against a finding of commonality.  Defendants arguments fail because they are opposed to

the allegations of the Plaintiffs' Complaint.  The Plaintiffs allege that the cars were defective as

purchased or leased, and thus use or maintenance should have no effect on the commonality of

their claims.  Also, the Plaintiffs allege that the problem with the OCS may be a design defect,

such that if the OCS was working as designed, it would still be defective and Plaintiffs would be due relief.

The critical issue of whether the OCS in 2007 Lexus ES 350s was defective is common to all putative class members.  With the exception of the issue of reliance in the FDUTPA claims, this issue predominates over the individual issues.  Defendants assert that there are several issues that would defeat an argument that the common issues predominate over the individual issues. The issues they present are similar to those they present to oppose a finding of commonality. Many of those issues are so related to the design of the OCS that we cannot find that they create the need for individualized mini-trials.  For example, they argue that whether the alleged OCS failure to classify a passenger properly is attributable to some act or omission by the owner or passenger – for example, not sitting properly in the passenger seat would cause the OCS to determine there is no passenger.  We find that it is a common issue as to whether the OCS should be able to determine there is an occupant in the passenger seat, even if the person is not sitting properly in the seat.  Other issues the Defendants present relate to damages.  We find these arguments unavailing, as the determination of diminution of value caused by the same alleged defect in the same year and model of car is a common issue, not an individual that defeats predominance.

We find that there exists commonality for all claims besides the claims under FDUTPA, and that the common issues predominate over the individual issues.

### D.  Rule 23(a)(3): Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Although similar to commonality in that it concentrates on the "nexus" between class members and the named class representative,

typicality differs from commonality in that it focuses on the named class representative's individual characteristics in comparison to the proposed class. Piazza v. Ebsco Indus. Co., 273 F.3d 1341, 1346 (11th Cir. 2001); Prado-Steiman v. Bush, 221 F.3d 1266, 1269 (11th Cir. 2000). A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3). Murray v. Auslander, 244 F.3d 807, 811 (11th Cir. 2001) (citing Prado-Steiman, 221 F.3d at 1279). "The test for typicality, like commonality, is not demanding." In re Disposable Contact Lens Antitrust Litig., 170 F.R.D. 524, 532 (M.D. Fla. 1996).

Plaintiff asserts that because Mr. Rosen has alleged damages that are typical of the other class members in that he alleges the same defect in his car as for the rest of the class. Defendants argue that the cases Dennis v. Whirlpool Corp., Case No. 06-80784-CIV-RYSKAMP/VITUNAC (S.D. Fla. March 13, 2007) (Order Granting Motion to Dismiss), and In re Canon Cameras Litigation, 237 F.R.D. 357 (S.D.N.Y. 2006) show that courts deny class certification in cases involving alleged defects in consumer products where there is no proof that the class members have suffered the same injury as the class representative.

The cases the Defendants cite are distinguishable on their facts. In Whirlpool, the Plaintiff's allegations surrounded manifestation of cracks in the class members' refrigerators. Here, the Plaintiffs are alleging that the OCS is defective in a way that would not necessarily be apparent to every car owner or lessee. In re Canon Cameras Litigation is distinguishable in that it was undisputed that the cause of the malfunction may have been "any of a variety of factors – many of which, such as customer misuse of the camera, would not result in manufacturer liability under any theory". 237 F.R.D. 357, 360. Here, the Plaintiffs have alleged that the cause of the defect originates from the design or manufacture. Defendants dispute that there is any defect, or

that any apparent defect is a result of owners' or lessees' misuse, but those disputed issues rest squarely in the merits of the case.

Furthermore, there are several cases where typicality has been found in similar factual scenarios.  E.g. Chamberlan v. Ford Motor Co., 223 F.R.D. 524, 526 (N.D. Cal. 2004) (finding typicality where the allegations were that the Defendants sold cars with defective engine intake manifolds to class members); Sanneman v. Chrysler Corp., 191 F.R.D. 441, 447 (E.D. Pa. 2000) (finding typicality when the plaintiff alleged a class action against a defendant for manufacturing and selling cars with a defective paint job); Joseph v. General Motors Corp., 109 F.R.D. 635, 640-41 (D. Colo. 1986) (finding that plaintiff showed typicality in a class action suit against a defendant for design defects in the engine of the defendant's cars).

We therefore find that Mr. Rosen's claim is typical of that of the proposed class members.

### E. Rule 23(a)(4): Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To adequately represent a class, a named plaintiff must show that she possesses the integrity and personal characteristics necessary to act in a fiduciary role representing the interests of the class, and has no interests antagonistic to the interests of the class.  In re Ins. Mgmt. Solutions Group, Inc., 206 F.R.D. 514, 516 (M.D. Fla. 2002); see also Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  In addition, this may include an examination of the chosen class counsel, especially if there is a potential conflict of interest.  London v. Wal-Mart Stores, 340 F.3d 1246, 1253 (11th Cir. 2003) (discussing cases in which class certification properly denied in instances such as where a named plaintiff's brother was class counsel, and where a named plaintiff was employee of class counsel).

Plaintiff puts forth that Mr. Rosen is motivated and capable of pursuing the interests of the class, and that Mr. Rosen's counsel belongs to a prominent and experienced plaintiffs' law firm.   Defendants argument against adequacy is that Mr. Rosen signed a lease agreement that contains a binding arbitration provision and a provision abdicating rights to participate in a class action.  Plaintiffs respond that the Defendants have waived arbitration by not enforcing the arbitration provision earlier in this case.

Mr. Rosen first filed suit against Defendants in July, 2007.  Up to this point, Defendants have not attempted to enforce the arbitration provision.  It is questionable whether Defendants may still do so, as "[w]aiver occurs when a party seeking arbitration substantially participates in litigation to a point inconsistent with an intent to arbitrate and this participation results in prejudice to the opposing party."  Morewitz v. West of Eng. Ship Owners Mut. Protection & Indem. Assoc., 62 F.3d 1356, 1366 (11th Cir. 1995).  As we stated above, the issue is not properly before this Court.  As doubts are to be resolved in favor of certification, we find that the arbitration provision does not yet present a bar to Mr. Rosen as class representative.

We find that Plaintiffs have met the adequacy requirement of Rule 23(a)(4).

### F. Rule 23(b)(3)

Rule 23(b)(3) has two requirements: that questions of common fact or law predominate over individual issues, and that class action litigation is the superior method for fair and efficient adjudication of the claims. Fed. R. Civ. P. 23(b)(3).  The predominance requirement was discussed above in section II.C.

To determine if the superiority requirement of Rule 23(b)(3) is satisfied, the Court must consider the following:

(A) the interest of members of the class in individually controlling the prosecution

or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
(C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and
(D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3); see also, De Leon-Granados v. Eller & Sons Trees, Inc., 497 F.3d 1214, 1220 (11th Cir. 2007).

Plaintiffs argue that a class action is superior in this case because of the dispersion of class members, and the economy of time, effort, and expense. They also state that they have no knowledge of any other lawsuits regarding the issues in this action. Defendants have not argued against the superiority of a class action to other means of resolving the dispute. Individual suits on these claims would be an inefficient use of the time, energy and resources of the Court, witnesses, experts and attorneys. We find that Plaintiffs have made a sufficient showing that a class action is the superior method for adjudicating this controversy. Since we found above at II.C that the Plaintiffs have shown predominance of common issues, the Plaintiffs have fulfilled the requirements under Rule 23(b)(3).

### G. Rule 23(b)(2)

Rule 23(b)(2) allows for a class action if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Generally applicable" means the party opposing the class "has acted in a consistent manner towards members of the class so that his actions may be viewed as part of a pattern of activity . . . [directed] to all members." Leszczynski, et al v. Allianz Insurance, 176 F.R.D. 659, 673 (S.D. Fla. 1997) (quoting 7A C. Wright, A. Miller, & M. Kane, Federal Practice, section

1775 at 449).  Though the predominant relief must be injunctive or declaratory relief, monetary

damages may also be sought in a Rule 23(b)(2) class action as incidental relief.  Murray v.

Auslander, 244 F.3d 807, 812 (11th Cir. 2001).  In Allison v. Citgo Petroleum Corporation, the

Fifth Circuit explained:

> By incidental, we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief.... Ideally, incidental damages should be only those to which class members automatically would be entitled once liability to the class (or subclass) as a whole is established . . .. Liability for incidental damages should not . . . entail complex individualized determinations. Thus, incidental damages will, by definition, be more in the nature of a group remedy, consistent with the forms of relief intended for (b)(2) class actions.

Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998); accord Murray v.

Auslander, 244 F.3d 807, 812 (11th Cir. 2001).

Plaintiff seeks, in the alternative, to bring a "hybrid" class action, for both monetary

damages and injunctive relief.  "A hybrid Rule 23(b)(2) class action is one in which class

members seek individual monetary relief . . . in addition to class-wide injunctive or declaratory

relief." Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1554 (11th Cir. 1986).   A hybrid or Rule

23(b)(2) class action is not appropriate where the "'appropriate relief relates exclusively or

predominantly to monetary damages.'" Holmes v. Continental Can Co., 706 F.2d 1144, 1155

(11th Cir. 1983) (quoting Fed. R. Civ. P. 23(b)(2) Advisory Committee Notes (1966

Amendment)).  If the declaratory relief is merely incidental to the monetary damages, then a Rule

23(b)(2) action is inappropriate, as is a hybrid class action.  Agan v. Katzman & Korr, P.A., 222

F.R.D. 692, 701-02 (S.D. Fla. 2004); Swanson v. Mid Am. Inc., 186 F.R.D. 665, 668-69 (M.D.

Fla. 1999).

Plaintiffs state that the primary remedies they seek are injunctive, and therefore this suit is

appropriate for class action under rule 23(b)(2).  They also state that the monetary damages they

seek are incidental to the injunctive remedies they seek.  Defendants respond that most of the relief the Plaintiffs seek is monetary and is not incidental to the requests for injunctive or declaratory relief.

Plaintiffs phrase much of the relief they seek in terms of injunctions or declaratory judgments.  However, requests for an injunction that the Defendants "offer rescission to the plaintiffs by returning the full costs paid for purchase or lease of the defective vehicles" or "reimburse plaintiffs for all costs" are, in effect, requests for monetary damages.  (Complaint, *ad damnum* clause).[3]  Yet Plaintiffs do request actual injunctive or declaratory relief, such as an injunction ordering recall of the cars or ordering repair at no cost.  Still, the Court cannot say that the monetary damages are merely incidental to the injunctive or declaratory relief.

Since Plaintiff only sought hybrid class certification as an alternative to certification under Rule 23(b)(2) or (b)(3), and we have already determined that the claims that survived the Rule 23(a) analysis also passed the Rule 23(b)(3) analysis, we need not determine if this class is appropriate for hybrid class designation.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Plaintiffs' Motion for Class Certification [DE 48] is hereby **GRANTED in part** with respect to claims for breaches of express and implied warranties and for injunctive and declaratory relief (Counts I, II, III, V, VI, VII, IX, X, XI, XIII, XIV, XVI, XVII, XVIII, XX), and **DENIED in part** with respect to the claims under FDUTPA (Counts IV, VIII, XII, XV, XIX);

---

[3]  Plaintiffs' *ad damnum* clause of Complaint requests: compliance with written and implied warranties; offer of rescission or repair; recall of the defective cars; reimbursement of costs of purchase, replacement, or repair of the OCS; notice to class members of the defect; award of restitution; "appropriate declaratory relief"; litigation and attorneys' fees and costs.  Of the twenty counts in Plaintiffs' complaint, fifteen allege some form of monetary damages.

2.  The Court hereby certifies a class pursuant to Fed. R. Civ. P. 23(b)(3) consisting of:

(a) a Class of every owner or lessee of a 2007 Lexus ES 350 who purchased or leased the vehicle in Florida;

(b) Subclass I of every member of the Class whose lease agreement contained arbitration provisions; and

(c) Subclass II of every member of the Class whose lease agreement contained no arbitration provision;

3.  Arnold Rosen is hereby certified as Class representative;

4.  The law firm of Sheldon J. Schlesinger, P.A. is hereby certified as Class counsel;

5. Plaintiffs shall file a proposed notice to class members for approval by the Court no later than February 9, 2009.  Defendants shall have until February 20, 2009 to file objections to Plaintiffs' proposed notice.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 26th day of January, 2009.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies furnished to:

Counsel of record